# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

CARLOS TERRELL BRINSON, )
)
      Plaintiff, )
)
v. )      No.:  3:25-CV-266-KAC-JEM
)
THOMAS SPANGLER, et al., )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Carlos Terrell Brinson, a prisoner formerly in the custody of the Tennessee Department of Correction ("TDOC"), filed a motion to proceed *in forma pauperis* [Doc. 1] and a complaint under 42 U.S.C. § 1983 [Doc. 2].  For the reasons below, the Court **GRANTS** the motion to proceed *in forma pauperis* [Doc. 1] and allows a use-of-force claim against Defendant David Isaacs in his individual capacity to **PROCEED** but **DISMISSES** all remaining claims and Defendants.

## I.      MOTION TO PROCEED *IN FORMA PAUPERIS* [Doc. 1]

Under the Prison Litigation Reform Act ("PLRA"), a prisoner who brings a civil action may apply for permission to file suit without prepaying the filing fee.  *See* 28 U.S.C. § 1915(a).  A review of Plaintiff's Motion demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum [*See* Doc. 1].  So, under 28 U.S.C. § 1915, the Court **GRANTS** the Motion [Doc. 1].

Plaintiff is **ASSESSED** the civil filing fee of $350.00.  The custodian of Plaintiff's inmate trust account **SHALL** submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty

percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the Complaint. 28 U.S.C. § 1915(b) (1)(A), (B). Thereafter, the custodian of Plaintiff's inmate trust account **MUST** submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II. SCREENING OF COMPLAINT

Under the PLRA, the Court must screen the Complaint and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The dismissal standard the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is "facial[ly] plausib[le]" if the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th

Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

On March 26, 2025, Plaintiff was housed at the "Rodger[1] D. Wilson Detention Facility" ("RDWDF") [Doc. 2 at 2, 3-4]. While Plaintiff was trying to use the kiosk, Defendant Correctional Officer ("CO") David Isaacs "sent [Plaintiff] outside" because a medical technician came in to pass out medication [*Id.* at 4]. Plaintiff attempted to explain to CO Isaacs that he needed to complete his kiosk request and grievance due to his limited time outside of his cell, but CO Isaacs told Plaintiff to go outside [*Id.*]. As Plaintiff was walking to the door, CO Isaacs became "upset" and told Plaintiff "to go lock down" [*Id.*]. Plaintiff went to his cell and closed the door, and CO Isaacs began removing Plaintiff's handcuffs [*Id.*]. In doing so, CO Isaacs "became overly aggressive and started jerking [Plaintiff] thr[ough] the pie flap" [*Id.*]. Plaintiff's left pinkie finger got caught in the pie flap and was broken when CO Isaacs pulled on Plaintiff [*Id.*]. Plaintiff said, "[s]top you just broke my finger" [*Id.*]. CO Isaacs replied, "[i]t hurt[]s don't [sic] it" [*Id.*].

CO Isaacs called the shift supervisor, Lieutenant Randall Kidd, and Plaintiff informed Lieutenant Kidd that he was in pain and needed medical attention [*Id.* at 4]. Lieutenant Kidd told Plaintiff, "I'll get you medical attention if you stop acting gay" [*Id.*]. A "nurse tec" came to see

---

[1] The facility is titled the "Roger D. Wilson Detention Facility," and the Court uses that title here.

Plaintiff and asked him to hold his hand up [*Id.*]. She looked (through the door) and walked away stating something about an x-ray, which Plaintiff finally received two days later at 6:05 a.m. [*Id.* at 5]. The x-ray revealed that Plaintiff's finger was broken, and that the bone was chipped [*Id.*]. Plaintiff "put [in] sick call after sick call" but did not receive pain medication or an answer to his sick calls until five days later, March 31, 2025 [*Id.*].

Plaintiff asked the pod officer if he could go to medical, but the officer called medical and was told there were not enough nurses on shift "to d[eal] with [Plaintiff's] broken finger" [*Id.*]. So, to test the system, Plaintiff asked his cellmate to say his chest was hurting to see if he received any medical attention [*Id.*]. The cellmate was given the choice to go to medical at that time or to wait until after "chow" [*Id.*].

On April 9, 2025, Plaintiff was called to medical, and a splint was put on his finger because he was going to court on April 11, 2025 [*Id.*]. Plaintiff told the judge he was not receiving adequate medical care at the RDWDF, and she stated that Plaintiff's "finger better be fix[ed] the next time [Plaintiff] come[s] to her court[]room" [*Id.* at 6]. Plaintiff "went back" on April 16, 2025, and as of April 20, 2025, "they still . . . have no d[one] anything to fix [his] finger" [*Id.* at 6, 7]. The only thing Plaintiff has been told is that "they referred [him] to a specialist [] orth[o]pedic" [*Id.* at 6]. "And everyone knows that these supervisor[]s and correctional officer[]s and administration are r[u]n by Sheriff Thomas Spangler and all authority is under his ruling" [*Id.* at 6].

Plaintiff sued Defendants Sheriff Thomas Spangler, CO David Isaacs, and the "Rodger D. Wilson Administration" [*Id.* at 1, 3]. It is unclear whether he seeks to sue the individual defendants in their individual or official capacity, or both. As relief, the Complaint asks the Court to "[s]tart my [his] civil procedures or have the lawyer representing these officer[]s and make some deal" [*Id.* at 7]. The Court liberally construed this to request a "deal" for some monetary relief.

4

To state a claim against any Defendant for relief under 42 U.S.C. § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

### A. Defendant Sheriff Spangler

Starting with Defendant Sheriff Spangler, to Plaintiff's benefit, the Court liberally construes the Complaint to raise claims against Sheriff Spangler in his individual and official capacities. To state a claim against Sheriff Spangler in his individual capacity, Plaintiff must adequately plead that Sheriff Spangler, through his own actions, violated a federal right. *See Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Constitutional liability cannot attach to a defendant solely based on his or her position of authority. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under Section 1983 may not be imposed merely because a defendant "employs a tortfeasor"). The Complaint contains no factual allegations against Sheriff Spangler personally [*See* Doc. 2]. Instead, Plaintiff sues him because of his position of authority [*Id.* at 6]. That is not enough. So, the Court **DISMISSES** any individual capacity claims against Defendant Sheriff Spangler.

Any official capacity claim fails too. Suit against Sheriff Spangler in his official capacity is a suit against Knox County, which employs him. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). For the Complaint to state a claim against Knox County, it must plausibly allege that a custom or policy of Knox County caused a violation of Plaintiff's federal rights. *See Monell*, 436 U.S. at 708 (1978) (Powell, J., concurring) (explaining a municipality can only be

5

held liable for a constitutional violation when the violation resulted from "implementation of [the municipality's] official policies or established customs"). But the Complaint does not plausibly allege that any custom or policy of Knox County caused any violation of Plaintiff's rights. Accordingly, the Court **DISMISSES** any official capacity claim against Defendant Sheriff Spangler too.

### B. Defendant RDWDF Administration

The Complaint does not specify which discrete acts the RDWDF "Administration" took that allegedly violated Plaintiff's federal rights. And "[i]t is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants." *Brown v. v. Montgomery Cnty. Mgmt.*, No. 3:22-cv-00580, 2022 WL 5213004, at *3 (M.D. Tenn. Oct. 4, 2022) (citations omitted). Furthermore, to the extent the "Administration" means the county jail administration, it is not a "person" subject to suit within the meaning of Section 1983. *Id.* Accordingly, the Court **DISMISSES** any claim against the "Administration."

### C. Defendant CO David Isaacs

Moving to Defendant CO Isaacs, the Court again liberally construes the Complaint to raise claims against Defendant CO Isaacs in his individual and official capacities. The Complaint does not plainly identify Plaintiff's custodial status at the relevant time [*See* Doc. 2]. But the Court can take judicial notice of publicly-available inmate information at the TDOC. *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)). TDOC Felony Offender Information records show that Plaintiff was convicted and began serving his current custodial sentence in July 2020. *See* https://www.tn.gov/correction/agency-

6

services/foil.html. So, the Eighth Amendment applies to his use of force claim against Defendant CO Isaacs. *See Lawler as next friend of Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (noting that the Eighth Amendment "kicks in only after a conviction").

The Eighth Amendment, incorporated against the states by the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.; *Robinson v. California*, 370 U.S. 660, 666–67 (1962). The Eighth Amendment's "ban on cruel and unusual punishment prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). As applied to the use of force by a correctional officer, as here, the law requires a subjective and objective component. *See id.* "As a subjective matter," the "core judicial inquiry" is to distinguish "between force used in a 'good-faith effort to maintain or restore discipline' and force used 'maliciously and sadistically to cause harm.'" *Id.* at 616 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)). Only "force exerted maliciously and sadistically to inflict pain" violates the Eighth Amendment. *Id.* (citation omitted). "As an objective matter, the Court has held that prisoners who challenge a correctional officer's use of force need not prove 'extreme' or 'serious' harms." *Id.* (citation omitted). "And the malicious and sadistic infliction of pain violates" applicable contemporary standards of decency "whether or not the pain leads to any significant injury." *See id.* (citation omitted).

Here, liberally construed, there are enough facts in the Complaint to infer that Defendant CO Isaacs used force "maliciously and sadistically to cause harm" to Plaintiff. *See Johnson*, 79 F.4th at 616. And the Complaint alleges that pain was inflicted on Plaintiff as a result [*See* Doc. 2]. At this preliminary screening phase, that is enough to allow Plaintiff's Eighth Amendment use of force claim against Defendant CO Isaacs in his individual capacity to **PROCEED.**

But any official capacity claim fails for the same reasons any official capacity claim against Defendant Sheriff Spangler fails. The Complaint does not plausibly allege that any custom or policy of Knox County caused any violation of Plaintiff's Eighth Amendment rights. Accordingly, the Court **DISMISSES** any official capacity use of force claim against Defendant CO Isaacs.

### D. Medical Care Allegations

The Complaint could also liberally be construed to raise an inadequate medical care claim. This claim too would arise under the Eighth Amendment because Plaintiff was an inmate at the relevant time. As relevant here, an Eighth Amendment inadequate medical care claim has both an objective and a subjective component. *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 315 (6th Cir. 2023). The objective component requires that the alleged deprivation "was serious enough to violate the Constitution." *See id.* (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020)). And the subjective component "requires a plaintiff to show that a defendant 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (alterations in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, there are no facts in the Complaint that would allow the Court to infer than any named Defendant, including CO Isaacs or Sheriff Spangler, committed acts that satisfied both the objective and subjective component of the law. Generally, a broken finger does not raise to the level of an objectively serious medical need. *See Thomas v. Nassau County Corr. Ctr.*, 288 F.Supp.2d 333, 338 (E.D.N.Y.2003) (collecting cases); *Small v. Clements*, No. 3:18-cv-1731 (KAD), 2018 WL 5634942, at *3 (D. Conn. Oct. 31, 2018) (noting "courts generally hold that a broken finger is not serious"); *Williams v. Alana*, No. 2:23-cv-142, 2023 WL 6427231, at *6 (W.D.

8

Mich. Oct. 3, 2023) (finding it "not at all clear" that Plaintiff's broken ring finger, which caused "extreme pain" satisfied "the objective component of the relevant two-prong test"). But even if the objective component were satisfied, the subjective component is lacking for each named Defendant. So, the Court **DISMISSES** any inadequate medical care claim against any named Defendant.

## III.     CONCLUSION

As set forth above,

1.     The Court **GRANTED** Plaintiff's motion to proceed *in forma pauperis* [Doc. 1];

2.     The Court **ASSESSED** Plaintiff the civil filing fee of $350.00;

3.     The Court **DIRECTED** the custodian of Plaintiff's inmate trust account to submit the filing fee to the Clerk in the manner set for above;

4.     The Court **DIRECTED** the Clerk to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy; and

5.     The Court allowed a use-of-force claim against Defendant David Isaacs in his individual capacity to **PROCEED** but **DISMISSED** all remaining claims and Defendants.

As a result,

1.     The Court **DIRECTS** the Clerk to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Isaacs;

2.     Plaintiff **MUST** complete the service packet and return it to the Clerk's Office **within twenty-one (21) days** of entry of this Order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

3.     If Plaintiff fails to return the completed service packet timely, the Court will dismiss this action;

4.     Defendant Isaacs **MUST** answer or otherwise respond to the complaint within **twenty-one (21) days** from the date of service. If Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against him;

9

5.      Plaintiff **MUST** immediately inform the Court and Defendant or his counsel of record of any address changes in writing.  Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13.  Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

 /s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

10